NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|                                           |     |                             |
|-------------------------------------------|-----|-----------------------------|
| ANTHONY ELLISON,                          | :   |                             |
|                                           | :   |                             |
| Plaintiff,                                | :   | Civ. No. 05-3738 (GEB)      |
|                                           | :   |                             |
| v.                                        | :   | **MEMORANDUM OPINION**      |
|                                           | :   |                             |
| JO ANNE B. BARNHART,                      | :   |                             |
| Commissioner of Social Security,          | :   |                             |
|                                           | :   |                             |
| Defendant.                                | :   |                             |
|                                           | :   |                             |

---

### BROWN, Chief Judge

This matter comes before the Court upon the appeal of plaintiff Anthony Ellison ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act") prior to May 1, 2003. The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

## I. BACKGROUND

On March 6, 2001, Plaintiff filed an application for disability insurance benefits and supplemental security income under Title II and Title XVII of the Act. Record ("R.") at 129-131, 182. Plaintiff based his application on the condition Hepatitis C which he claimed limited his ability to work due to chronic fatigue and frequent flu-like illness. R. at 163, 182. Plaintiff alleged that his disability commenced on December 31, 1998. R. at 129, 163. On or about April 12, 2001, the

1

Social Security Administration denied Plaintiff's claim.  R. at 84-88, 182.  The claim was also denied on reconsideration on June 20, 2001.  R. at 91-93.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review the his application de novo.  R. at 94.  The hearing was held on March 12, 2003 before ALJ Mark G. Barrett.  R. at 23-71.  On January 21, 2004, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of May 1, 2003, but not prior thereto.  R. at 21.

At the hearing, Plaintiff testified that he lives with his common law wife and three children, ages eight, seven and six.  R. at 30.  Plaintiff explained that he starts a typical day at 6:00 am, prepares his children for school, attends medical appointments and visits the mosque for prayer and meditation.  R. at 52.  Plaintiff was previously visiting the employment office in search of employment or training.  Id.  In the evening, Plaintiff testified that he gets his children ready for bed, occasionally attends classes at the mosque and retires around 8:30 pm.  R. at 53.  Plaintiff testified that he drives himself, although he tries not to do so for more than 30 or 40 minutes due to fatigue and problems focusing.  R. at 32, 64.  Plaintiff testified that he does not drink or smoke.  Id.  Plaintiff also testified that he took a trip to Georgia in 2002 to visit relatives.  R. at 53-54.

Regarding his past work experience, Plaintiff testified that he was employed by the City of Philadelphia from 1977 until 1995 as a supervisor of security guards at the Free Library.  R. at 33.  Plaintiff testified that as a security guard he patrolled the building and performed custodial duties which required carrying heavy objects.  R. at 34 - 35.  Plaintiff then testified that he stopped working as a security guard in 1995 to take care of his sick mother.  R. at 35.  Plaintiff testified that prior to leaving, his job performance had decreased and he missed quite a few days of work.  R. at 35.

Plaintiff testified that he was self-employed from 1995 until 1997 and attempted to do part-time custodial work from 2000 until 2002 but could not fulfill the requirements of the job. R. at 38-39. Plaintiff also testified that he received worker's compensation on March 14, 2000 and unemployment benefits in 2002. R. at 41-42.

When questioned about his illness, Plaintiff testified that in 1998 he was experiencing headaches, dizziness, lack of concentration, memory loss and fatigue. R. at 36. Plaintiff believed at the time that these symptoms were caused by the stress of caring for his sick mother. R. at 36. Plaintiff testified that he was diagnosed with Hepatitis C in 2000 and discovered that the symptoms he experienced were likely due to the illness. R. at 36-37. Plaintiff further testified that he was in a car accident in 1997 which increased the symptoms of dizziness and nausea. R. at 37.

At the hearing in 2003, Plaintiff testified that he was experiencing headaches, aches and pains, cramps, nausea, continuous rash, fatigue and an inability to concentrate associated with the Hepatitis C. Id. Plaintiff testified that these symptoms were currently worse at the time of the hearing than they were in 2000. Id. Plaintiff also testified that he had more aches and pains in 2003 than in 2000, was dizzy when bending over more in 2003 than in 2000 and could not walk as far or stand as long in 2003 than in 2000. R. at 43-47. Plaintiff testified that he started prescription medication in 2003 but did not recall taking any medication in 2000. R. at 47-49. Plaintiff testified that he experienced side effects from the medication including increased fatigue, headaches, nausea and loss of appetite. R. at 50. Plaintiff also testified that he did not receive any other treatment for Hepatitis C other than this medication. R. at 51. When questioned by his attorney, Plaintiff testified that the medication he was currently taking stems the mutation and growth of the cirrhosis of the

liver and stems any cancer that may develop but will not cure or alleviate the symptoms of Hepatitis C.  R. at 58.

The ALJ issued a decision on January 21, 2004, determining that Plaintiff is disabled within the meaning of the Act.  R. at 10-21.  The ALJ concluded that Plaintiff has been a disabled individual since May 1, 2003, but not prior thereto.  R. at 21.  The ALJ summarized all of the evidence in the record in the opinion, which included the following medical examinations of Plaintiff.  R. at 15-17.  In March 2001, C.T. Gallagher, M.D. evaluated the Plaintiff at the request of the Social Security Administration.  R. at 15.  During that examination, Plaintiff reported a history of Hepatitis C and complained of frequent illness and general malaise.  Id.  Plaintiff denied having any specific treatment for the Hepatitis C and the examination was otherwise unremarkable.  R. at 15, 17.  In July 2001, Plaintiff was evaluated at the Family Health Center for a follow up visit.  R. at 15.  Plaintiff denied abdominal pain and the examination was essentially within normal limits. R. at 15.  In November 2001, a liver study was completed which revealed unremarkable exotexture of the liver, no intraphepatic ductal dilation and only a mildly enlarged liver.  Id.  In March 2002, Plaintiff was seen for a follow up visit during which he admitted to active heroin use and complained of abdominal pain.  Id.  An evaluation of the abdomen revealed no masses or organomegaly and BS was normoactive.  Id.  In May and June 2002 Plaintiff visited Jersey Shore Medical Center for a liver biopsy, however, the procedure was not performed until July 2002 and revealed chronic, active Hepatitis with evolving cirrhosis.  R. at 15.

On May 1, 2003, Plaintiff was admitted to Jersey Shore Medical Center for complaints of nausea and vomiting.  R. at 15.  Plaintiff was treated with IV fluids and was discharged on May 8,

2003 with a diagnosis of pancreatitis secondary to Hepatitis C medications, Hepatitis C, hypertension, depression likely secondary to interferon treatment, hypokalemia, coagulopathy secondary to early cirrhosis, splenomegaly, thrombocytopenia due to splenomegaly, cholelithiasis, anemia due to splenomegaly and/or chronic disease, hypoalbuminemia and renal cysts.  R. at 16. Dr. Dhamija conducted another evaluation of the Plaintiff on August 25, 2003 and diagnosed him with Hepatitis C and thrombocytopenia.  Id.  Dr. Dhamija found that due to Plaintiff's condition, he was limited to certain tasks including lifting/carrying weights of 10 pounds occasionally and standing/walking for less than 2 hours total.  Id.  Plaintiff also was unable to balance and kneel and had limitations on reaching and handling as well as his ability to see, hear and speak.  Id.  Further, Dr. Dhamija noted that Plaintiff was limited from exposure to extreme temperatures, noises and various conditions.  Id.

Based on these examinations, the ALJ found insufficient evidence in the record prior to May 1, 2003 that would preclude Plaintiff from performing essential work related activities.  R. at 17. According to the ALJ, prior to May 1, 2003 a treating or examining physician never restricted Plaintiff in a manner that would have precluded the performance of substantial gainful activity.  Id. While the ALJ stated that Plaintiff may have experienced diminished periods of abilities, Plaintiff did not satisfy the requirements of a disability.  Id.  The ALJ found that prior to May 1, 2003, Plaintiff retained the residual functional capacity for a full range of light work activity.  R. at 18.  The ALJ found that the Plaintiff was able to lift/carry weights of 10 pounds frequently and 20 pounds occasionally, stand/walk and sit for a total of 6 hours, climb, balance, stoop, bend, kneel, crouch, crawl and push/pull.  Id.  The ALJ noted that Plaintiff engaged in work as a custodian in 2000 and

5

received unemployment benefits in 2002.  R. at 17.  According to the ALJ, by accepting these benefits the Plaintiff admitted that he was able to engage in substantial gainful activity.  R. at 15. However, after May 1, 2003, the ALJ found that Plaintiff's conditions deteriorated so much that they eroded his occupational base.  R. at 17.  The ALJ stated that, while Plaintiff retained the residual functional capacity to perform the requirements of a full range of light work activity, he was not able to do so on a regular basis.  Id.  The ALJ concluded that as of May 1, 2003, Plaintiff could not perform even sedentary work activity.  Id.

After reviewing the entire record, the ALJ made the following findings: 1) Plaintiff met the insured status requirements of the Act on December 31, 1998 and continued to meet them through March 31, 2000 but not thereafter; 2) Plaintiff has not performed any substantial gainful activity since December 31, 1998; 3) Plaintiff suffers from Hepatitis C which is considered to be severe under the Act and Regulations; 4) Plaintiff's impairments do not meet or equal in severity the appropriate medical findings listed in the Regulations; 5) Plaintiff's allegations regarding his impairments and resulting functional limitations, after May 1, 2003, are generally credible; 6) for the period up to May 1, 2003, Plaintiff retained the functional capacity to perform a full range of light work activity; 7) Plaintiff's past relevant work as a security guard is defined as light and unskilled according to the Dictionary of Occupational Titles; 8) based on Plaintiff's residual functional capacity and vocational factors, prior to May 1, 2003, Plaintiff was able to perform a full range of light work activity and was able to perform his past relevant work as a security guard; 9) beginning on May 1, 2003, although Plaintiff retained the residual functional capacity to perform light work activity, he was unable to perform these activities on a regular basis due to excessive and severe

6

fatigue and shortness of breath - thus the Plaintiff was unable to perform even sedentary work; 10) beginning on May 1, 2003 Plaintiff has been unable to perform his past relevant work; and 11) Plaintiff has been under a disability as defined by the Act since May 1, 2003 but not prior thereto. R. at 20-21.

Plaintiff requested that the Appeals Council review the ALJ's decision. R. at 8. The Appeals Council denied the request on May 27, 2005. R. at 3-5. Plaintiff then filed the instant civil action with this Court, seeking review of the Social Security Administration's denial of Social Security Disability and Supplemental Security Income benefits for lack of disability.

## II. DISCUSSION

### A. **Standard Of Review For Social Security Appeals**

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing

evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983).  The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits.  <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978)(internal citation omitted).  As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review.  <u>Fargnoli</u>, 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B.  Standard For Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520.  In the first step, the ALJ must determine whether

the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).

If the claimant is working and the work is a substantial gainful activity, his application for disability

benefits is automatically denied.  Id.  If the claimant is not employed, the ALJ proceeds to step two

and determines whether the claimant has a "severe impairment" or "combination of impairments."

20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.

Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets

or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing").  20 C.F.R. §

404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation

ends.  Id.; 20 C.F.R. § 404.1520(d).

    If it is determined that the impairment does not meet or equal a listed impairment, the ALJ

proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite

limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether

those limitations prevent the claimant from returning to work performed in the past ("past relevant

work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous

work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of

work, the evaluation must continue to the last step.  The fifth step requires a determination of

whether the claimant is capable of adjusting to other work available in the national economy.  20

C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's

age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits

turns on a finding that the claimant is incapable of performing his past work or some other type of

work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  <u>Id.</u>  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  <u>Id.</u>  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work."  <u>Id.</u>  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  <u>Id.</u>  The step five analysis "can be quite fact specific."  <u>Burnett v. Commissioner</u>, 220 F.3d 112, 126 (3d Cir. 2000).

### C. <u>The ALJ's Decision Was Based Upon Substantial Evidence In The Record</u>

Plaintiff contests the ALJ's partially favorable determination which found him disabled due to symptoms relating to Hepatitis C as of May 1, 2003,  but not prior thereto.  Pl.'s Br. at 8-15. Plaintiff claims that the ALJ's decision to use May 1, 2003 as the disability onset date was not based on substantial evidence in the record. Pl.'s Br. at 5, 9-10.  More specifically, Plaintiff contends that he was positively diagnosed with Hepatitis C in 2001 and records indicate that he was carrying the disease before he was officially diagnosed.  Pl.'s Br. at 9, R. at 390-402. Plaintiff contends that he reported carrying Hepatitis C during his intake interview in 2000.  R. at 403.  Further, Plaintiff was

admitted to the hospital for a liver biopsy in 2002 which indicated that Plaintiff had chronic, active Hepatitis with evolving cirrhosis.  R. at 15, R. at 333-382.  According to Plaintiff, May 1, 2003 was the date of hospitalization for symptoms relating to Hepatitis C, but the disease was so severe before that date that Plaintiff was being administered Interferon injections.  Pl.'s Br. at 10.  However, the ALJ's decision indicates that Plaintiff's history with Hepatitis C prior to 2003 was considered together with the recorded medical evaluations to reach the determination that Plaintiff retained the residual functional capacity to perform light work before May 1, 2003 but not thereafter.

The ALJ's decision took into consideration Plaintiff's statements regarding the difference in his abilities in 2000 and 2003.  R. at 16-17.  For example, Plaintiff testified that in 2000 he could stand for 30 minutes; walk for 5 blocks; sit, bend and stoop without difficulty; lift/carry groceries; and climb with some difficulty. R. at 16.  In 2003, however, Plaintiff testified that the Hepatitis C was worse than in 2000 and in 2003 he could only stand for 15 minutes; walk for 3 blocks; sit, bend and stoop with some difficulty; lift/carry groceries; and climb with increased difficulty.  R. at 17, 46-47.  The ALJ also considered the fact that despite several examinations,  no treating or examining physician placed any limitations or restrictions on the Plaintiff's functional abilities to preclude him from performing substantial gainful activity prior to May 1, 2003.  R. at 17.  More specifically, the ALJ considered the March 2001 evaluation by Dr. Gallagher which was a few days prior to Plaintiff's last insured date.  R. at 15.  This examination was considered unremarkable and Plaintiff denied receiving any specific treatment for his illness.  R. at 15, 17.  Finally, the ALJ relied on Plaintiff's admittance to the hospital and subsequent evaluation by Dr. Dhamija in 2003 to determine that Plaintiff should be restricted from even sedentary work activity after May 1, 2003.  R. at 16-17.

Therefore, the Court finds that the determination of the ALJ as to Plaintiff's residual capacity prior to and after May 1, 2003 was based on substantial evidence in the record.

Plaintiff also asserts that the May 1, 2003 disability onset date is arbitrary and Social Security Ruling 83-20 ("SSR 83-20") should have been followed when the ALJ established the onset date of Plaintiff's disability pursuant to Titles II and XVI of the Act.  Pl.'s Br. at 10.  According to Plaintiff, SSR 83-20 is employed when the onset of a disability is non-traumatic and where there is a need for an inference as to the onset date.  Pl.'s Br. at 11.  Plaintiff also cites to the HALLEX guidelines which set forth certain circumstances which require an expert opinion from a medical advisor, including when the onset date of a disease is uncertain.  Pl.'s Br. at 12.

According to the Regulations, if there is information in the file indicating that additional medical evidence concerning the onset date is available, such evidence should be considered before any inferences are made.  SSR 83-20.  In this case, the ALJ considered medical records dating back to 2000 and testimony from the Plaintiff relating to his condition in 1998.  R. at 14-19.  The existence of this information precludes the need for an inference as to the onset date.  Moreover, Plaintiff contends that because his insured status expired in 2000,  he cannot collect disability benefits despite the ALJ's favorable determination that his Hepatitis C is considered a disability as of May 1, 2003.  Id. at 9.  Plaintiff states that he was diagnosed with Hepatitis C in 2001, which was on or about the date that his insurance status expired.  Id.  However, the Act requires more than the mere presence of a disease in order to be found disabled by it.  Def.'s Br. at 14.  Defendant cites to Capoferri v. Harris, 501 F. Supp. 32, 36 (E.D. Pa. 1980), aff'd 649 F.2d 858 (3d Cir. 1981) and Alexander v. Shalala, 927 F. Supp. 785, 792-93)(D.N.J. 1995), aff'd 85 F.3c 611 (3d Cir. 1996) in

support of this position.  In order to be considered disabled under the Act, the illness must cause functional limitations that preclude the performance of any substantial gainful activity.

Further, Plaintiff contends that the ALJ erred by not using a medical advisor to determine the disability onset date.  Pl.'s Br. at 13. According to the Regulations, in cases where an inference as to the onset date is required, an informed judgment of the facts must be considered and the judgment must be based on a legitimate medical basis.  SSR 83-20.  The regulations further state that when inferring the onset date the ALJ should utilize a medical advisor.  SSR 83-20. In addition, the Plaintiff argues that the HALLEX guidelines list circumstances under which the ALJ may need to obtain an opinion from a medical advisor.  Pl.'s Br. at 12.  These circumstances involve cases in which the medical evidence is conflicting or confusing, the ALJ questions the etiology of a disease or disease process and where the onset of the disability is questioned.  Id.; HALLEX I-2-534A.

 Plaintiff cites Newell v. Commissioner of Social Security, 347 F.3d. 541 (3d Cir. 2003) in support of his argument that a medical advisor should have been consulted in this case to determine the onset date.  Pl.'s Br. at 12-13.  However, in Newell, the ALJ was not presented with any medical evidence to support a finding of a disability and was required to infer an onset date.  With the lack of evidentiary support, the Court found that the ALJ should have consulted a medical advisor when rendering its decision.  Newell, 347 F.3d at 548-49.  In the case at hand, the ALJ considered a significant record of medical evidence including testimony by the Plaintiff, several consultative examinations of the Plaintiff and the review of Plaintiff's records by State Agency physicians.  R. at 186-190, 202-240, 248-324, 330-537, 69, 325-26, 191-92, 539-48, 194-201.  SSR 83-20 indicates that   medical evidence is the primary source of information when determining onset dates.

Therefore, the Court finds that the ALJ was not required to call upon a medical advisor given the circumstances of this case and there was substantial evidence in the record supporting the ALJ's determination of the onset date.

Finally, Plaintiff alleges that the ALJ did not provide a sufficient evaluation at Step 3 of the sequential evaluation process.  Pl. Br. at 16.  While Plaintiff specifically challenges the basis of the ALJ's determination that the Plaintiff did not meet the medical listing of 5.05, the ALJ's cited medical evidence in the record along with the Plaintiff's testimony demonstrated the substantial evidence necessary for making this determination.   Therefore, the Court does not agree with Plaintiff's assertions that the ALJ's decision was not based on an informed medical judgment and that the decision was "beyond meaningful judicial review."  Burnett, 220 F.3d at 119.  Further, Burnett requires that the ALJ either identify the relevant listed impairment, discuss the evidence or articulate his reasoning so long as there is a sufficient framework to review upon appeal.  Id. at 120.  The Court finds that the ALJ did not err by referencing the medical listing and that the ALJ relied upon substantial evidence in the record to make the determination.

Accordingly, the Court finds that the ALJ's decision was based upon substantial evidence in the record and Plaintiff's appeal is denied.

## III.  CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: September 11, 2006

   s/ Garrett E. Brown, Jr.          
GARRETT E. BROWN, JR., U.S.D.J.

14